FILED

MAR X 3 2005

U. S. DISTRICT COURT
E. DISTRICT OF MO.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Securities and Exchange Commission,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>William W. Canfield,<br><br>　　　　　　　　　　Defendant. | **4:05CV00369 SNL**<br><br>Civil Action No. |

## COMPLAINT

Plaintiff the Securities and Exchange Commission ("Commission"), for its complaint, alleges as follows:

1.　TALX Corporation ("TALX"), a Missouri corporation with its principal place of business in St. Louis, Missouri, provides automated employment verification services and automated employee self-service applications. TALX became public in 1996 and its common stock is registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"). The company's fiscal year ends March 31, and it files reports on Forms 10-K and 10-Q. TALX common stock is quoted on the NASDAQ National Market System.

2.　William W. Canfield ("Canfield" or "Defendant"), age 65, a resident of Kirkwood, Missouri, has been the president and chief executive officer of TALX since 1987. He has been the chairman of the board of directors of TALX since 1988.

3.　The Commission brings this action pursuant to the authority conferred upon it by Section 20 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t] and Section 21 of the Exchange Act [15 U.S.C. § 78u] to impose a civil money penalty against Defendant.

4. The Commission seeks an order requiring Defendant to pay $100,000 in civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21 of the Exchange Act [15 U.S.C. § 78u].

5. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. §§ 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa]. Venue lies in this Court pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act.

6. Certain of the transactions, acts, practices and courses of business constituting the violations of law alleged herein occurred within this judicial district.

7. In connection with the transactions, acts, practices, and courses of business described in this Complaint, Defendant, directly or indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, of the facilities of a national securities exchange, and/or of the means and instruments of transportation or communication in interstate commerce.

8. During the time period relevant to this Complaint, TALX placed emphasis on meeting its internal and external financial projections, and highlighted its earnings growth to the market. For example, in an October 2000 investor conference call concerning the company's second quarter earnings, Canfield stated, "We believe that the trend of the last 7 quarters of delivering substantial [earnings per share] increases, and 3 quarters of delivering 50 plus percent quarter over quarter increases, will continue." Similarly, on January 17, 2001, TALX announced a 50 percent increase in its third quarter earnings per share and a 53 percent increase in its earnings per share for the nine months ended December 31, 2000.

9.  During early 2001, TALX began to consider raising additional capital through a secondary stock offering. On April 25, 2001, TALX announced it had met its fourth quarter and year ended March 31, 2001 earnings per share target, and that its earnings per share had grown by more than 50%. After informing the market in its April 26, 2001 investor conference call that TALX expected its 2001 earnings trend to continue through 2002, TALX set the stage for the secondary offering.

10. On June 22, 2001, TALX filed an S-3 registration statement with the Commission. On June 28, 2001, TALX filed its 2001 Form 10-K. TALX filed three amendments to its S-3 registration statement in July and August 2001, two of which incorporated the financial statements contained in TALX's 2001 Form 10-K. TALX's 2001 financial results were also contained in TALX's Forms 10-K filed on July 1, 2002 and May 22, 2003, and in TALX's Forms 8-K filed on July 16, 2001, July 18, 2001, and on June 25, 2002.

11. On July 18, 2001, TALX reported record first quarter 2002 earnings with earnings growth exceeding 50%. Between April 2000 and August 3, 2001, TALX's stock price had climbed 240%, from approximately $10 to $34. Between April 26, 2001 and August 3, 2001, TALX's stock price had increased from approximately $26 to $34. On August 3, 2001, TALX filed with the Commission a prospectus and completed its secondary offering of 2.95 million shares of common stock for $32 per share, raising approximately $82 million for the company and $6 million for Canfield.

12. TALX, however, met its 2001 financial targets through accounting misstatements which inflated falsely TALX's financial performance. The misstatements inflated artificially TALX's 2001 stock price leading up to TALX's August 3, 2001 secondary offering.

3

13. TALX's misstatements included capitalizing costs relating to a patent infringement claim that should have been expensed. On or about March 13, 2001, TALX entered into a license agreement with a patent holder. TALX's payment to the patent holder included payment for claimed past use of patented technology, which was a period cost with immediate expense recognition under generally accepted accounting principles ("GAAP"). TALX, however, capitalized the payment. Canfield knew or should have known that the payment should have been expensed. Had TALX properly expensed the payment, TALX would have fallen short of its previously announced financial projections. Instead, TALX overstated pre-tax income by $1.6 million, or 49 percent, for its fiscal year ended March 31, 2001.

14. TALX's misstatements further included expensing bonuses in the wrong period. On or about April 12, 2001, Canfield and two other TALX executives gave up half of their fiscal 2001 bonuses, in aggregate totaling $158,000. One month later, on or about May 15, 2001, TALX paid bonuses totaling $158,000 to Canfield and the other executives. GAAP requires that administrative salaries be expensed in the period of the event when the cost occurred. The reinstated bonuses should have been expensed in fiscal 2001, but TALX expensed them in fiscal 2002. Canfield knew or should have known that the bonuses were improperly expensed in fiscal 2002. By expensing the bonuses in the wrong period, TALX overstated its fiscal 2001 pre-tax income by $158,000, or 5 percent.

15. As a result of the conduct described above, TALX made material financial misrepresentations in Forms 10-K and 10-Q for the years ended March 31, 2001 and 2002, and for the three months ended June 30, 2002, and in TALX's fiscal 2002 registration statement, by overstating its fiscal 2001 pre-tax income by $1.8 million, or 54 percent.

4

## FIRST CLAIM FOR RELIEF
### (Sections 17(a)(2) and (3) of the Securities Act)
### 15 U.S.C. § 77q(a)(2) and (3)

16. Plaintiff repeats and realleges paragraphs 1 through 15 above.

17. By engaging in the conduct described herein, Canfield violated Sections 17(a)(2) and (3) of the Securities Act.

## SECOND CLAIM FOR RELIEF
### (Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1 and 13a-13)
### 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13

18. Plaintiff repeats and realleges paragraphs 1 through 15 above.

19. By engaging in the conduct described herein, Canfield aided and abetted TALX's violations of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1 and 13a-13.

## THIRD CLAIM FOR RELIEF
### (Section 13(b)(2)(A) of the Exchange Act and Rule 13b2-1)
### 15 U.S.C. § 78m(b)(2)(A) and 17 C.F.R. § 240.13b2-1

20. Plaintiff repeats and realleges paragraphs 1 through 15 above.

21. Canfield aided and abetted TALX's violations of Section 13(b)(2)(A) of the Exchange Act, and Canfield violated Rule 13b2-1 of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court order Defendant Canfield to pay a civil money penalty in the amount of $100,000 under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

5

Dated: March 2, 2005

Respectfully submitted,

/s/ Karpel

Mary S. Brady
Ian S. Karpel

Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO 80202
Phone: (303) 844-1000
Fax: (303) 844-1010

6

```
t(
V1
```

Stephen N. Limbaugh

DECK TYPE: St. Louis - Civil

DATE STAMP :03/03/2005 @ 13:00:44

CASE NUMBER   4:05CV00369
  E &10H